UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

EDITH DARBY                                    CIVIL ACTION

VERSUS                                         NO. 20-1723

PRIMERICA LIFE INSURANCE                       SECTION "R" (1)
COMPANY AND ASHTON LUCIAN
KING


**ORDER AND REASONS**


Defendant, Primerica Life Insurance Company ("Primerica"), moves for summary judgment.[1]   Plaintiff, Edith Darby, opposes the motion.[2] Because there is no genuine dispute of material fact, and because Primerica is entitled to a judgment as a matter of law, the Court grants Primerica's motion.


I.      BACKGROUND

This case arises from a denial of life insurance benefits.  On February 4, 2019, Darby, as policy owner, and her son, Wilbert Bias, as insured,

---

[1]      R. Doc. 22.
[2]      R. Doc. 32.

applied for life insurance with Primerica.[3]   In completing the application,

Bias answered "no" to the following two questions:

> [w]ithin the past 10 years has any person named in this application been treated for or diagnosed by a member of the medical profession with: . . . [a] mental or nervous disorder?[4]

> [w]ithin the past 10 years, has any person named in this application: . . . used illegal or illegally obtained drugs (including prescription drugs) or been convicted of drug or alcohol related charges?[5]

Both Bias and Darby both signed the policy application where it stated as

follows in bold-face type:

> The approval of insurance for the proposed insured(s) is based on the representations made regarding the use of tobacco or nicotine, responses to medical questions and other application information.   False representations will result in a denial of coverage in a claims investigation and may be considered insurance fraud.[6]

Further, Bias and Darby both agreed that "[u]pon delivery, either by paper

or electronically, We will review it to confirm that Our responses are true and

---

[3]      R. Doc. 22-2 at 1 ¶ 1(Primerica, Statement of Undisputed Facts);  R. Doc. 32-1 at 1 ¶ 1 (Darby, Statement of Undisputed Facts).
[4]      R. Doc. 22-2 at 1 ¶ 2 (Primerica, Statement of Undisputed Facts);  R. Doc. 32-1 at 1 ¶ 2 (Darby, Statement of Undisputed Facts).
[5]      R. Doc. 22-2 at 1 ¶ 3 (Primerica, Statement of Undisputed Facts);  R. Doc. 32-1 at 1 ¶ 3 (Darby, Statement of Undisputed Facts).
[6]      R. Doc. 22-2 at 3 ¶ 10 (Primerica, Statement of Undisputed Facts);  R. Doc. 32-1 at 1 ¶ 10 (Darby, Statement of Undisputed Facts).

complete."[7]   Bias and Darby both acknowledged in completing the application that if Bias "die[d] within two years from the issue date of any coverage . . .  [Primerica] may contest such coverage under the policy."[8] Further, Bias and Darby acknowledged that "coverage may be rendered void if [Primerica] determines that any information in the application related to such coverage is false, incomplete or incorrect."[9]

After the policy came into force, Bias died on August 22, 2019.[10]  On or about August 22, 2019, Darby submitted proof of Bias's death to Primerica in an attempt to collect on the policy.[11]  Because Bias died during the two-year contestability period set forth in the policy, Primerica contends that it initiated a routine investigation.[12]   In the course of that investigation, Primerica contends that it discovered Bias was diagnosed with and treated for a mental or nervous disorder and that he was a regular illegal drug user.[13]

---

[7]    R. Doc. 22-2 at 2 ¶ 6 (Primerica, Statement of Undisputed Facts);  R. Doc. 32-1 at 1 ¶ 6 (Darby, Statement of Undisputed Facts).
[8]    R. Doc. 22-2 at 2 ¶ 9 (Primerica, Statement of Undisputed Facts);  R. Doc. 32-1 at 1 ¶ 9 (Darby, Statement of Undisputed Facts).
[9]    R. Doc. 22-2 at 2 ¶ 9 (Primerica, Statement of Undisputed Facts);  R. Doc. 32-1 at 1 ¶ 9 (Darby, Statement of Undisputed Facts).
[10]    R. Doc. 22-2 at 4 ¶ 15 (Primerica, Statement of Undisputed Facts);  R. Doc. 32-1 at 12 ¶ 15 (Darby, Statement of Undisputed Facts).
[11]    R. Doc. 22-2 at 4 ¶ 16 (Primerica, Statement of Undisputed Facts);  R. Doc. 32-1 at 2 ¶ 16 (Darby, Statement of Undisputed Facts).
[12]    R. Doc. 22-2 at 4 ¶ 17 (Primerica, Statement of Undisputed Facts).
[13]    *Id.* at 4 ¶ 18.

In light of the information it discovered in its investigation, Primerica asserts that it denied Darby's claim, rescinded its policy, and refunded the premiums paid for the policy.[14]

Darby filed suit in state court on April 17, 2020, asserting a breach-of-contract claim and seeking damages.[15]  Primerica removed to this Court on June 15, 2020, contending that the requirements for diversity jurisdiction under 28 U.S.C. § 1332 are met.[16]  Now, Primerica moves for summary judgment, arguing that Bias's misrepresentations on the insurance application preclude the success of Darby's breach-of-contract claim.  The Court considers the motion below.

## II.    LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).  "When assessing whether a dispute to any material fact exists, [the Court] consider[s] all of the evidence

---

[14]    *Id.* at 4 ¶ 20.
[15]    R. Doc. 1-1 at 6.
[16]    R. Doc. 1.

in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).  All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2738 (2d ed. 1983)); *see also Little*, 37 F.3d at 1075.  "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).  The nonmoving party can then defeat the motion by either countering with evidence sufficient to demonstrate the "existence of a genuine dispute of material fact," or by "showing that the moving party's

5

evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id*. at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id*. at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for resolution. *See, e.g.*, *id*.; *Little*, 37 F.3d at 1075 ("Rule 56 '*mandates* the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at 322 (emphasis added))).

## III.   DISCUSSION

### A.     Darby's Evidentiary Objections

Primerica supports its motion for summary judgment by citing to uncertified medical records.  Plaintiff objects to the use of those records, contending that they do not constitute competent summary judgment evidence.[17]  Plaintiff argues that the Court may not consider the medical records because they are not verified by an affidavit, or alternatively, because they are hearsay.  Plaintiff's objections are without merit.

In 2010, Congress amended Federal Rule of Civil Procedure 56 to omit "[t]he requirement that a sworn or certified copy of a paper referred to in an affidavit or declaration be attached to the affidavit or declaration . . . ."  Fed. R. Civ. P. 56, advisory committee's notes.  Following the 2010 amendments, Rule 56(c)(1) provides that parties may support their assertions of fact by citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials."  As the Fifth Circuit noted in *Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017), an affidavit is only "one way to 'support' a fact" under the 2010 Rule.  *See also Perpall v. Pavetek Corp.*,

---

[17]     R. Doc. 32 at 8.

No.12-336, 2017 WL 1155764, at *8 (E.D.N.Y. Mar. 27, 2017) ("[T]he [medical] records being unsworn or uncertified, in itself, does not bar their consideration for purposes of a summary judgment motion in federal court."); 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2722 (4th ed. 2021) (noting that before the 2010 amendment "it was recognized that an exhibit could be used on a summary-judgment motion only if it were properly made part of an affidavit" but that this is no longer the case). Thus, plaintiff's contention that the Court must exclude defendant's evidence as unsupported by affidavit is without merit.

 Instead, under the 2010 amendments, "[t]o avoid the use of materials that lack authenticity or violate other evidentiary rules," a party may object on the ground "'that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence'" at trial. *Lee*, 859 F.3d at 355 (quoting Fed. R. Civ. P. 56(c)(2)).

On this front, plaintiff objects that the medical records are hearsay. The Fifth Circuit has held that medical records are admissible as business records, so long as the records meet the requirements of Rule 803(6). *Wilson v. Zapata Off-Shore Co.*, 939 F.2d 260, 271 (5th Cir. 1991) ("Rule 803(6) provides a hearsay exception for records kept in the course of *any* regularly conducted business activity, which would include hospitals." (emphasis in

original)); *United States v. Duncan*, 919 F.2d 981, 986 (5th Cir. 1990) ("Because the medical records from which the insurance company records were *made were themselves* business records, there was no accumulation of inadmissible hearsay." (emphasis added)); *see also Francois v. Gen. Health Sys.*, 459 F. Supp. 3d 710, 723–24 (M.D. La. 2020) ("'Medical records are routinely admitted as evidence under the business records exception to the hearsay rule.'" (quoting *Logan v. Westfield Ins.*, No. 17-29, 2020 WL 406785, at *3 (W.D. La. Jan. 24, 2020)). There is nothing to suggest that defendant would not be able to satisfy the requirements for Rule 803(6) at trial. Moreover, statements made by Bias for medical treatment or diagnosis are not excluded by the hearsay rule.[18] Fed. R. Evid. 803(4). Furthermore, plaintiff has offered no reason to question the authenticity of the medical records submitted by Primerica, and plaintiff makes use of the records' contents in her briefing.[19] Accordingly, the Court finds plaintiff's objections to the medical records without merit.

---

[18]   For example, a medical record indicates that Bias told his health care providers at New Orleans East Behavioral Health Center that he suffered from "panic attacks," "depressed mood," and that he "[r]eport[ed] problems w/mood swings and anxiety for the past 8yrs or so."   R. Doc. 22-6 at 2.
[19]   R. Doc. 32 at 9.

**B.    Primerica's Motion**

Under Louisiana Revised Statute Section 22:860,[20] an insurer is not liable for the death benefit provided by its policy if the insurer can show that the insured made misrepresentations on his application for insurance.  The relevant statute provides:

> In any application for life . . . insurance made in writing by the insured, all statements therein made by the insured shall, in the absence of fraud, be deemed representations and not warranties. That falsity of any such statement shall not bar the right to recovery under the contract unless either one of the following is true as to the applicant's statement:
>
> 1.    The false statement was made with actual intent to deceive.
>
> 2.    The false statement materially affected either the acceptance of the risk or the hazard assumed by the insurer under the policy.

La. Rev. Stat. § 22:860.  Although the statute appears disjunctive, permitting an insurer to rescind an insurance policy if either one of the above factors is satisfied, Louisiana courts have consistently employed a conjunctive three-part test in applying this statute, requiring an insurer to show (1) the statements made by the insured were false; (2) the misrepresentations were made with the actual intent to deceive; and (3) the misstatements materially affected the risk assumed by the insurer.  *Cousin v. Page*, 372 So. 2d 1231, 1233 (La. 1979);  *State Farm Mut. Auto. Ins.  v. Bridges*, 36 So. 3d 1142, 1146

---

[20]    There is no dispute that Louisiana law applies.

(La. App. 2 Cir. 2010) (same);  *Dean v. State Farm Mut. Auto. Ins.*, 975 So. 2d 126, 132 (La. App. 4 Cir. 2008) (same); *see also Smith v. Liberty Life Ins.*, No. 11-3171, 2012 WL 6162757, at *2 (E.D. La. Dec. 11, 2012) (applying Louisiana law and employing the same three-part test).  Accordingly, the Court proceeds in considering the three factors provided by the *Cousin* decision and its progeny.

### C.  False Statements

Primerica contends that Bias made two false statements in his application.  It asserts that Bias made a false statement in answering "no" to whether he had been treated for or diagnosed with a mental or nervous disorder in the past ten years.  Primerica also asserts that Bias made a false statement in answering "no" to whether he had used illegal drugs within the past ten years.

### 1.  *Mental or Nervous Disorder*

Neither the Primerica policy nor the application form defines the term "mental or nervous disorder."  The Fifth Circuit has found that the ordinary meaning of "mental or nervous disorder" includes conditions like depression.  *Tolson v. Avondale Indus., Inc.*, 141 F.3d 604, 610 (5th Cir. 1998); *see also Perault v. Time Ins.*, 633 So. 2d 263, 266 (La. App. 1 Cir. 1993) ("[W]ords in an insurance contract are to be construed in accordance

with their plain and ordinary meaning."). Primerica points to a medical record from Central City Mental Health Center,[21] indicating that Bias had diagnoses for "Generalized Anxiety Disorder," "Mood Disorder," and "Other psychosocial environmental problems."[22] A medical record from New Orleans East Behavioral Health Center, dated June 2, 2015,[23] indicates that Bias reported "panic attacks" as well as "depressed mood" to his health care providers. The same document indicates that Bias was prescribed "Zoloft titration to 100mg daily for anxiety and mood," as well as "Hydroxyzine" for anxiety.[24] In light of the uncontroverted evidence provided by Primerica, the Court finds that there is no genuine issue of material fact as to whether Bias made a false statement by answering "no" to the question of whether he had been diagnosed with or treated for a "mental or nervous disorder" within the past ten years.

2. *Illegal Drug Use*

Next, the Court considers whether Bias made a false statement in indicating that he had not used illegal drugs in the past ten years. In multiple places, the medical records indicate that Bias used cannabis regularly. For

---

[21]   R. Doc. 22-9.
[22]   *Id.* at 1.
[23]   R. Doc. 22-6 at 2.
[24]   *Id.* at 5.

example, the record from Central City Mental Health Center includes "Cannabis Abuse" as one of Bias's diagnoses.[25]   And the New Orleans East Behavioral Health Center record indicates that Bias indicated he "[w]as self-medicating" with cannabis as of June 2015.[26]   The same record indicates that Bias smoked cannabis every day up until a week before his June 15 appointment.[27]   Cannabis is a controlled substance under both federal and state law.   *See* 21 U.S.C. § 844 (providing that simple possession of marijuana is punishable by "a term of imprisonment of not more than 1 year" and a minimum fine of $1,000, or both); La. Rev. Stat. § 40:966 (setting out various criminal penalties based upon the amount of marijuana a person possesses).

Plaintiff points out that Bias's cannabis use may not have been illegal under state law if he had been prescribed cannabis by a physician.   *See* La. Rev. Stat. § 40:1046.   This argument is without merit.   Louisiana's medical-prescription exception did not go into effect until May 19, 2016,[28] and the medical records indicate that Bias was "self-medicating" with daily cannabis

---

[25]   R. Doc. 22-9 at 1.

[26]   R. Doc. 22-6 at 2.

[27]   *Id.*

[28]   R. Doc. 32 at 6; *see also* Louisiana State Legislature, *2016 Regular Session: SB271*, http://www.legis.la.gov/legis/BillInfo.aspx?i=229751 (providing that the Governor signed the legislation and it became effective on May 19, 2016).

use in 2015.  Further, there is no evidence in the record that Bias was prescribed cannabis by a physician.  The Court finds that Primerica has established that there is no genuine issue of material fact as to whether Bias made a false statement by answering "no" to the question of whether he had used illegal drugs in the past ten years before completing his application.

### D.    Intent to Deceive

Next, the Court considers whether Bias acted with the "intent to deceive" when he made the above representations.  "Because of the inherent difficulties of proving intent, strict proof of fraud is not required to show intent to deceive." *Bridges*, 36 So. 3d at 1146.  Instead, the intent to deceive "must be determined from surrounding circumstances indicating the [1] insured's knowledge of the falsity of the representations . . . and [2] his recognition of the materiality of his misrepresentations, or from circumstances which create a reasonable assumption that the insured recognized the materiality." *Cousin*, 372 So.2d at 1233.

Darby phrases much of her briefing as though she, and not Bias, completed parts of Bias's life insurance application.[29]  Arguments going to Darby's knowledge and intent are not material to the issue before the Court.  Rather, Section 22:860's language regarding misrepresentations refers to

---

[29]    *See* R. Doc. 32 at 7.

statements "made by the insured." *See also Bridges*, 36 So. 3d at 1147 (considering whether the "*insured* misrepresented a material fact and did so with the intent to deceive" (emphasis added)).  It is undisputed that Bias answered "no" to the relevant questions at issue.[30]  It is also undisputed that Bias signed the application, acknowledging that his representations were "true and complete."[31]  The Court does not find Darby's arguments regarding her own knowledge or intent material to the issue before the Court.

### 1.   *Bias's Knowledge of Falsity*

The Court first considers whether there is sufficient circumstantial evidence to indicate that Bias knew that his representations were false.  The Central City Mental Health Center medical record supplied by Primerica indicates that Bias had nineteen scheduled appointments over a three-year period from 2015 to 2018.[32]  Four of those appointments are labeled "Psychiatric Diagnostic Evaluation."  Two of the appointments, both in 2015, are labeled as "Medication Management" appointments.

Plaintiff argues that the Central City Mental Health Center record merely shows that Bias scheduled appointments, not that he attended

---

[30]    R. Doc. 22-2 at 1 ¶¶ 2-3 (Primerica, Statement of Undisputed Facts); R. Doc. 32-1 at 1 ¶¶ 2-3 (Darby, Statement of Undisputed Facts).

[31]    R. Doc. 22-2 at 2 ¶ 4 (Primerica, Statement of Undisputed Facts); R. Doc. 32-1 at 1 ¶ 4 (Darby, Statement of Undisputed Facts).

[32]    R. Doc. 22-9.

them.[33]   This argument is without merit.  The medical record catalogues "Service Documents" associated with each scheduled appointment.  One of those documents, for example, is labeled "Vitals," indicating that Bias's vitals were taken at one of those appointments he attended.[34]   Further, plaintiff does not dispute that on June 2, 2015,[35] Bias attended an appointment at New Orleans East Behavioral Health Center.   A record from that appointment indicates that Bias communicated "mood swings and anxiety," as well as "depressed mood" to his health car providers.[36]  The same record also notes diagnoses of "Generalized Anxiety Disorder" "Mood Disorder" and "Cannabis Abuse" and that Bias was prescribed medications for these conditions.  The Court finds this uncontroverted circumstantial evidence sufficient to establish that no genuine dispute of material fact exists as to whether Bias knew that his representations were false when he made them on his application.  *Cf. West v. Safeway Ins. Co. of Louisiana*, 954 So. 2d 286, 290 (La. App. 2 Cir. 2007) (finding intent to deceive where insured represented that no one regularly operated her vehicle, when she knew that her sister did).

---

[33]     R. Doc. 32 at 9.
[34]     R. Doc. 22-9 at 1.
[35]     R. Doc. 22-6 at 2.
[36]     *Id.*

2.   *Bias's Knowledge of Materiality*

As to whether Bias knew that the misrepresentations were material, the policy application communicates in bold print that "[t]he approval of insurance for the proposed insured(s) is based on the representations made regarding . . . responses to medical questions and other application information."[37]  Bias and Darby both signed the application just beneath this language.  The Court finds that this language clearly communicated that Bias's representations were material to whether Primerica would issue life insurance to him.  Accordingly, the Court finds that no issue of material fact exists as to whether Bias had the intent to deceive in making his misrepresentations.

On the issue of Bias's intent, Darby points to *Trahan v. Transamerica Life Ins.*, No. 18-1085, 2020 WL 3196725 (M.D. La. June 15, 2020).  There, a plaintiff answered "no" to a question that stated: "*other than what you have already disclosed*, within the past five years have you: . . . been advised to have an X-ray, electrocardiogram, laboratory test or other diagnostic study?"  *Id.* at *6 (emphasis added).  The district court noted plaintiff had already disclosed a history of the relevant health problem elsewhere in her application as well as the name of her doctor.  The plaintiff's disclosure of

---

[37]   R. Doc. 22-4 at 8.

this medical information created a genuine issue of material fact on the question of the plaintiff's intent to deceive in the alleged material misrepresentations. *Id.* at *12. This case is inapposite because, here, there is no indication that Bias disclosed his drug use or medical problems elsewhere on his application.

### E.    Materiality

To prove materiality, the insurer must show that "the misstatements materially affected the risk assumed by the insurer." *Cousin*, 372 So. 2d at 1233. On this element, Primerica points to the declaration of Roxanne Head, an employee in Primerica's underwriting department. Head attests[38] that "[t]he questions contained in Primerica Life's Application for Life Insurance are . . . for use in underwriting the insured risk and determining whether to insure an individual and, if so, on what terms to insure and what premium to charge."[39]   Head attests that she reviewed Bias's medical records and "advised the Claims Department that, had Underwriting known of the Decedent's mental health treatment and his habitual illegal drug use at the time of the Application, Underwriting would not have issued the Policy."[40]

---

[38]    The document is signed by Ms. Head, and includes the language "I declare under penalty of perjury that the foregoing is true and correct." R. Doc. 22-8 at 2 ¶ 10.

[39]    R. Doc. 22-8 at 1 ¶ 3.

[40]    *Id.* at 2 ¶ 8.

In addition to Head's declaration, the insurance application itself indicates, in bolded print, that the insured's representations are relevant to "approval of insurance."[41]  Plaintiff has introduced no evidence tending to show that the misstatements were immaterial regarding defendant's risk assumption. Accordingly, the Court finds that no issue of material fact exists as to whether Bias's misrepresentations materially affected the risk assumed by Primerica. For the foregoing reasons, the Court grants summary judgment for Primerica.


## IV.   CONCLUSION

For the foregoing reasons, Primerica's motion for summary judgment is GRANTED.


New Orleans, Louisiana, this   4th   day of May, 2021.


_Sarah Vance_
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE


---

[41]      R. Doc. 22-2 at ¶ 10.